first is number 22-1762, Arendi S.A.R.L. v. Oath Holdings Inc. v. Mr. O'Connor. Good morning, Your Honors. May it please the Court. I want to focus my argument on three points today, the 101 point and the two claim construction points regarding document and electronically displayed. But before I get to those, let me briefly touch on this waiver reviewability argument that Google makes. First, it is substantively incorrect because the final judgment in… This is about the anticipation obviousness verdict? Yes, Your Honor. And the district court granted, I mean, denied the post-trial motions, right? The district court denied them as moot. It refused to consider the… Moot? It refused to consider the post-trial motions at all. It did not issue a substantive ruling agreeing or disagreeing with our post-trial motions. But didn't it rule that it was moot? Didn't it rule that it was moot? She denied the… Here's what the district court said. The district court declined to address the issues raised in that post-trial motion because according to the district court, there's only one claim in the case. There was an order that denied the motion. I'm sorry, Your Honor? There was an order that denied the motion. Yes, Your Honor, yes. As Judge Lynn said, it didn't say it was moot. It just denied the motions, right? I may have misspoke with the moot part, but at the end of the day, the district court didn't reach the merits of that post-trial motion because there was no counterclaim file and so it was within the district court's… What's the difference? The jury found two independent bases to find against your claim of infringement. I don't understand how the district court judge can elect to ignore part of the jury verdict. She either had to rule on your Rule 50 motion and grant or deny it. And it sounds like she denied it, which means the jury's on infringement is still out there. Or alternatively, if she didn't rule on it and held it in abeyance somehow, then this isn't even a final judgment. I think the case… The case law you cite to us, as far as I can tell, is when the case is tried to the bitch and the district court judge has before it questions of infringement and invalidity, and the district court judge certainly, without a counterclaim, can elect to decide only on infringement. This case was tried to a jury. Both questions were submitted to the jury. They weren't submitted in the alternative. The jury found against you on both of them. Right. And that's… Can you give me any authority that says a district court judge is free to disregard a portion of a jury verdict without granting a post-trial motion? That is the multi-form desiccant's case that we cite in our brief. And the multi-form desiccant's case is instructive. I think it controls here. And that case stands for the proposition that a district court need not address validity when it is asserted only as an affirmative defense. Was that a jury trial? I do not know, Your Honor. I can check on that. Well, let's just assume it wasn't a jury trial. Then it's not relevant to this situation, right? Do you have any citation for authority that says the district court, after a jury verdict, can enter judgment only on one of those grounds absent expressly ruling on some kind of post-trial motion? The cases are uniform. The cases you're about, unless you can point me to a specific one that's applicable to this situation, are where it was tried to the judge as a bench trial. And you're absolutely right. When it's tried as a bench trial, the judge can elect to rule on only infringement and not reach invalidity if there's no counterclaim. That's not what happened here. You're asking us to ignore a jury verdict that the judge did not set aside. The cases that we cite do not distinguish between jury and non-jury. Are any, no, do any of them talk, are any of them involving a jury situation? I don't know. I could find that out for you, but I don't know. You would think you would have known that before you came in here and argued it. Do you not understand the distinction between this? Absolutely understand the distinction, but the cases don't make. The cases don't make the distinction because I don't think you cited anyone where it involved a jury. The cases distinguish between an affirmative defense and a counterclaim. Cardinal chemical, multi-form desiccants, if the defendant doesn't have a counterclaim, there's only one claim in the case. It is the claim for infringement. And if there's a non-infringement. Cardinal chemical line of cases has much to do with this. I mean, cardinal, cardinal chemical is whether you're entitled to a ruling on the invalidity issue if you haven't filed a counterclaim. I mean, here the question is, does this judgment rest on two alternative theories, only one of which you've appealed? Right, and the final judgment is abundantly clear from the district court's ruling. The district court did not consider or implicate invalidity in the final judgment. All that she says is your claims of infringement fail, but that doesn't mean that it failed on non-infringement grounds. It could just as well mean that it failed because they approved their affirmative defense. Well, in the absence of a counterclaim, excuse me, in the absence of a counterclaim, that affirmative defense becomes surplusage, right? What happens to the jury verdict on validity after we decide the case one way or the other? I think that the jury verdict on invalidity is surplusage given the non-infringement finding. You mean it just vanishes? Well, it does not have any kind of legal force given the non-infringement findings. If we remand, whether we affirm or reverse or vacate, if we remand, then what happens? Well, I guess it depends on how you remand. If there's a claim... I'm sure to agree with you that the non-infringement finding has to be set aside and there's a remand. I mean, surely at that point, you must agree that the district court has to reach the invalidity ground, right? If the court changes the construction, the claim constructions that were applied below, I think there needs to be a new trial on infringement and invalidity. There's nothing in the record. My point is, one way or the other, if we remand with instructions to the district court to proceed with whatever issues remain, wouldn't the district court be obligated to address that validity verdict? I mean, it can't just disappear. I think it can disappear, to use your Honor's words, if there is a new claim construction that's issued along with the order, right? That's understandable position. I mean, if you're right and she hasn't decided the invalidity question, and that still has to be open on a remand, you may argue that a changed claim construction would affect the invalidity or that there needs to be a new trial, but it has to be that under your view of what's happened here, that a remand has to allow the district court, require the district court to address the invalidity, right? Yes, Your Honor. I would agree with that. Yes. It would still be a viable issue because the validity of this patent might affect other parties or might very well affect other parties in the future. I would agree with that. Yes. Are you saying that when the parties agree to submit two questions to the jury and not an alternative, that when the jury finds for non-infringement, then the invalidity portion is just advisory or not effective somehow? According to the case law, in the absence of a counterclaim, yes. You could have a decision. She could have entered judgment on the invalidity verdict even though there wasn't a counterclaim. The counterclaim has nothing to do with it. The question is what's the judgment that's before us? Does it include the invalidity finding or doesn't it as an alternative ground? I don't think it does. The court made clear that it did not. I don't see how you think the court made clear. She said she wasn't going to narrow it to non-infringement in her order and set aside the invalidity part. Let me ask you this because you keep insisting that without a counterclaim, the jury's finding on invalidity somehow goes out. What if she had just flat out denied both of your motions on both of them and let the jury verdict stand? Would you still be taking the same position that you didn't need to appeal the invalidity because there was no counterclaim? Yes. That's just wrong. You have no authority that says that. If there's a jury verdict on both grounds and they're not conditional, then there are independent grounds for supporting the judgment. If you failed to appeal them, then you would be out. If you're reading the case law that way, I think you're just misreading it. You're reading it for when district court judges, things are tried to the bench. You're asking us to void a jury verdict that the district court didn't void. Yes, and I think that is the law under multi-form desiccants in related cases. You can't take an affirmative defense and transform it into an affirmative claim. That's ridiculous. You can have alternative grounds for the judgment. If she'd entered judgment on the jury verdict on both grounds, you'd have to appeal both grounds if you wanted to prevail. What if the jury had found no infringement but invalidity, even though it's just an affirmative defense? Then surely the jury verdict rests on infringement. As an alternative defense, yes, it rests on it. Yes, it's an alternative ground, but there's no alternative ground here given the absence of a counterclaim. If Google wanted to okay. The problem is that what the district court did here is very unclear. She was very unclear about what she was doing. She denied the post-trial motions with respect to the invalidity verdict, but then seemed to say somehow that the invalidity verdict wasn't part of the judgment. It's hard to, it's very hard to follow what she was saying. The court did say that she was going to enter judgment in favor of Google. This is at appendix 98. Regardless of what the court thinks about the merits of Arendi's arguments about Google's affirmative defenses. I think that's some evidence that she did not reach the invalidity issues, whether you want to frame it as a claim or an affirmative defense. She was not reaching it, regardless of what the court thinks of the merits of the arguments about that. Let's just assume we don't think she's free to disregard the jury's verdict on invalidity. I You filed post-trial motions. She denied them, but she entered a judgment that doesn't appear to address, and I don't even know if this is correct, but reading it most favorably to you, she entered a judgment that appeared to cabinet to infringement and not include invalidity. Then how is it a final judgment? Well, I mean, again, I know I'm sounding like a broken record, but the absence of a counterclaim, there's only one claim in the case. Okay. If that's your only answer, then you're going to lose on that with me. That's the final judgment aspect of it. There was only one claim in the case. The court entered judgment. The claim is for patent infringement. An affirmative defense of invalidity is a defense to that without a counterclaim. Without a counterclaim, it's an affirmative defense. The jury could have found no infringement here but invalidity, and you still would have lost on your claim of patent infringement, right? So there are two independent bases for you losing your claim of patent infringement. Our claim of patent infringement? Without an affirmative — without a counterclaim. Right. Again, the — And their defense against your claim of patent infringement rests on two independent bases. One, they didn't infringe, and two, it was invalid. The jury agreed with them on both, and you only appealed one of them. We only appealed the aspect that was part of the final judgment. There was no — my rhetorical question is, what could we have appealed with respect to the invalidity of the court? Well, you shouldn't have confused the district court by asking her not to rule on something that was part of the jury's verdict. I mean, I blame this confusing entirely on you for saying she didn't need to reach it because there was no counterclaim. She certainly needed to reach it because it was part of the jury's verdict, and she submitted both questions to them, not an alternative. You filed post-trial motions on both those issues and then went back and said, oh, no, you don't have to rule on this one. And now you've left us with a judgment that is confusing and we don't know what to do with. We'll take the blame, but I will also say that the district court did raise the issue, after we filed our post-trial motion, and kind of raised the issue as to whether or not she had the discretion to consider the post-trial motions on invalidity. Okay. Unless there are further questions about this, I'm going to give you some time to address the merits of the infringement verdict and the 101 issues. Thank you very much. Going back to 101, as the court said in the Randy v. Apple case, the invention of the 843 patent is, quote, it provides a beneficial coordination between a first computer program displaying a document and a second computer program for searching an external information source. And so this invention is an improvement in the computer's ability to undertake inner program orchestration, including through an improved interface, using analyze, identify, search. She didn't decide that the 843, or Judge Stark, I guess it was, didn't decide that the 843 was unpatentable under 101, right? Right. I think the same benefit... There's an assertion that that's an alternative ground for sustaining the judgment here. That's problematic. But so why don't you address the 101 question with respect to the other patents and then maybe at the end of that discuss whether they're right that the 843 is the same. Absolutely. This improvement as a computer, or in the computer as a tool, is reflected in those other claims from the other patents as well. So all four claims from the four patents specify these orchestrated actions that only computers can perform, analyzing a document for first information of a certain type and invoking a second program to search for an external, to search an external source. We see that in Claim 2 of the 356 and Claim 1 of the 993. And the district court's basis to distinguish those two claims from the 843 doesn't really have support in the claim language. The district court mentioned some kind of temporal limitation of both documents, or both programs, excuse me, being open at the same time or running at the same time. So both parties agree that all the patents should stand or fall together under 101? I think if your question is... I don't know if we agree. But I think if your question is should the patents all rise and fall together, I think the answer is a little nuanced in the sense that I think they're all directed to an improvement in computer functionality. So that's step one. Well, they're all directed to the idea of sort of fetching data from a different program while you're operating in a single program. Interesting idea. The problem for me is in the details. I don't see anything in the claims that describes the computer functionality in terms of how that is accomplished. Just a broad statement of, you know, when you're in one program, it will look and find signs of information that will give clues to fetch other information related, such as a name or an address. I mean, that's an idea. But I don't know that that describes the functionality of how that is done. I think two things on that. Number one, I think it does describe the functionality in the context of it's telling you what to look for and then what to do with it when you find it. Search and then what to do when you find... Does it describe how that's done? My second point is, in other cases that have found claims, very similar claims eligible, there's a similarly not a how it's done. If you look at Data Engine that we cite, if you look at FinGen that we cite, if you look at ANCORA, those are directed to use the coursework ideas without really any kind of specificity on how it's done. Like take... In Data Engine, it strikes me that the claims in question here are more like claim one in that case rather than claim 12 in that case. Why am I wrong? I think you're wrong because the claims in Data Engine are, I would even submit, are even broader than these claims. Because the claims in Data Engine, the eligible claim in Data Engine, was simply a selection of claims that involved displaying certain pieces of data and inputting pieces of data. Not necessarily telling you how or what to do with that data. So I think the claims in Data Engine, and certainly the claim in ANCORA, and certainly the claim in FinGen, are broader from a details perspective than... Those are all eligible claims. I think they're broader from a details perspective than any of the representative claims in this case. And in the Data Engine case, the claims were eligible because they recited a... They improved computer's functionality as a tool, right? As a tool. We're not using the computer as a tool to do something else or to practice a longstanding commercial practice. We're improving the computer's functionality as a tool to instantly access all parts of complex 3D spreadsheets. In this case, similarly, the limitations improve the computer's functionality to access information by analyzing a document to determine the presence of first information, retrieving that information, performing a search using that information, and that avoids the user having to contact switch, avoids the user having to have access to and knowledge of a secondary information repository. So these asserted claims, I think, are directed to a specific technique. That departs from earlier information processing, right? Having to go back and forth between disparate computer programs, getting access to those programs, and being able to understand how that second program works. I would like to touch on the claim construction issues if I can, Your Honor. We'll give you a couple of minutes. Thank you. So very briefly, the document term need not be limited to one in which text can be entered and is not limited to a word processing spreadsheet or similar file. But at the end of the day, editability is not a requirement to be a document in this patent, right? We start with the plain ordinary meaning of the patent. And in this case, document has two limitations. It's got to be electronic, and it's got to contain text. And if you look at the claims, there's nothing that says that that mandates editability. And we can see that when the patentee wanted to mandate editability in the claims, he said so in the claims. If you look at claim one of the 843 and compare that to claim one of the 356, the latter requires editability. And again, if we look at the specification, that too doesn't mandate editability. These are non-limiting examples in the specification. I don't have to tell this court about improperly importing limitations from the specification into the claims. That's even the case when every single embodiment in the patent, as you know, does so. So if we agree with you on this document, time construction, then the case goes back to the district court, and now we're back to the validity judgment, or the validity verdict, right? Yes, Your Honor. So you, in effect, your argument on infringement will get you back to the district court to argue, once again, validity? Well, yes, because... You would have been better off not arguing that and leaving your validity issue to go away, as you say, which I don't think is the case in any event. I think if there is a reversal on the construction of document, yes, we'd go back. We'd have a new trial on everything because it's a brand new construction, and that's one of the reasons the district court cited in her discussion... I don't want to take any more time, but... I think we're about out of time. We'll give you two minutes for rebuttal. Thank you so much, Your Honor. Ms. Anders? Thank you, and may it please the court, I'm Ginger Anders for Google LLC. You've got a jurisdictional problem, too, because you didn't file a cross appeal on the 101 ineligibility of the 843 patent, which RadioSteel and TypeWrite suggest you need to do. It has nothing to do with whether it's a counterclaim or not because the unpatentability finding would expand the judgment. So we don't think that's the case here because the judgment rests on invalidity as well as on non-infringement. So there would be no expansion of the judgment if the 843 is ruled ineligible. So I think that takes us back to the 843 invalidity issue. So if I could... Ineligibility is the same thing as invalidity. Have we ever held that? I'm not sure that the court has, but I think just as a matter of... I think there might be a distinction there. Invalidity is 102 or 103 as presented to the jury, and eligibility is, you know, it has the same effect in rendering a patent invalid or unenforceable. But I'm not sure it's the same thing as invalidity. If it's not, then you would have had to cross appeal, right? I think they're doctrinally, you know, somewhat distinct things, but I think they are both defenses. We would have had to cross appeal if you don't think that invalidity is exactly the same as ineligibility. But I also think that the court should not reach any of the 843 issues because of the invalidity issue that you're discussing with my friend on the other side. So if I could maybe turn to that and explain why I think the judgment does rest on invalidity. I think what the district court did here was really confusing. And if I could... And, you know, she denies the post-trial motions, but yet she seems to treat this as an unresolved issue. So go ahead. Sure. So I'd like to make three points. So I think the first one is that once the jury ruled on invalidity as well as non-infringement, the Seventh Amendment kicked in. This was a jury verdict. The reexamination clause forbids reexamining disturbing a jury verdict except on the grounds that were available at common law, which means essentially Rule 59. Arendi filed a Rule 59 motion, but then it pulled it back, asked the court not to rule on it. The district court denied that JML motion, leaving the verdict to stand. So the jury verdict stands. At that point, the district court also denied Arendi's request to narrow the judgment. And although my friend on the other side suggested that maybe the judgment rested only on infringement, I think it could not be clearer. I would suggest in some of those colloquies that she's not entering judgment on invalidity. I don't know whether she has the authority to do that or not. Does she? No, I don't think she would have had the authority to narrow the judgment. And I think that's not what she did. So what do we do if we have a situation where she doesn't have the authority to do that, absent granting the appropriate post-trial motion, which she didn't do, but she thinks she was doing that? And so, I mean, do we hold her to what, I mean, at least I think the law would provide, which is if it wasn't disturbed, then it still underpins the judgment. Or what she thought she was doing in reading it, I think the proper way to read it, she thought she wasn't putting the invalidity as part of the final judgment. So I think, actually, I would disagree with that, Your Honor. I think she did think that she was, and if I could read the part of the- I understand. There's a way to read it your way. I think it's, let's just assume for hypothetical sake that I think she thought she was not including invalidity as a ground for the final judgment. And so if she didn't do that, then what do we do with the case? It almost seems like, you know, it's not really a final judgment because she's deferred deciding on something she needed to decide on. So let me make a couple points with respect to that. So the first is, I think if you look at the order, I don't mean to question the premise, but if you look at page 95 of the appendix, what the district court says is, Arendi asks the court to clarify in the judgment document that the judgment is based on the jury's non-infringement verdict at trial. The court declines to do so. It is unclear if Arendi's request represents an attempt to limit what issues the parties can or must raise on appeal against or in support of the judgment. Nothing in this order is intended to preclude either side from making whatever arguments on appeal they are permitted to make under the law or that they are required to make in order to preserve their arguments. And then she entered judgment for Google and against Arendi on the only claim in the case, which was Arendi's claim of non-infringement. So I think if you read all of that together, I think it's very clear that she thought that she was entering a judgment that was supported by two independent grounds, non-infringement and invalidity. I don't think it's clear. I think it's very unclear. And so I think even if you think it's unclear, then I think the principles we've been talking about, the Seventh Amendment background principle here that says that jury verdicts can't be disturbed unless a Rule 59 motion is granted, I think that kicks in. And I would urge the court to interpret what the court did. There's another alternative here. And we've done this in other cases, is to give leave to the parties to go back to the district court and clarify what the judgment is. I think Arendi has waived several times over any kind of action like that. It's a question of what we think we need in order to decide this case. If we can decide that the judgment is confusing and unclear, we can ask the parties to go back and get the district court to clarify it. Should we do that? I don't think the court should do that because I do think, one, it's clear. I understand your honors may disagree with that. If you disagree with that, then I do think that the Seventh Amendment background principle here is really important. And then the next point I want to make, and so I think the court should read, it should interpret what the district court did in light of that principle because it wouldn't have had authority to. Well, that's the question your opponent wants to raise, which is that because this was only an affirmative defense, not a counterclaim, that the district court is always free to rest the judgment on only the non-infringement finding. And that's certainly, I think you would agree in a bench trial that a district court judge is free to do that if he or she finds infringement that they need not go on without a counterclaim to reach invalidity. But are you aware of any cases where both of those questions were submitted to the jury and not in any conditional way? They found for the defendant on both and the judge was allowed to base the final judgment on only one of the jury's verdicts, not both. No, I'm not aware of any such case. I do think it would be inconsistent with the Seventh Amendment and Rule 59 to do that. So I think that's why there aren't any cases like that. I think the only significance of the fact that Google didn't, that invalidity wasn't a counterclaim was that before the jury ruled, the parties, the court would have been able to say the verdict form should be in the alternative. Randy had that opportunity. They forfeited. They, in fact, proposed a verdict sheet that asked the jury to rule on both. So the jury found both. It found invalidity. It found non-infringement. So at that point, the Seventh Amendment had kicked in. If Randy wanted to disturb that verdict, it had a couple options. It could move for Rule 59 to frontally attack the verdict. It did that at first. The district court denied that motion. The other thing it could do is come up on appeal and say, you know, that there are other issues in the case that undermine the invalidity verdict. And so just to turn to that. They could have appealed the invalidity verdict. They could have appealed the invalidity verdict in some sense. They didn't do that. So I guess the way I would think about this is as a sort of forfeiture waiver issue several times over, not as a finality issue. There is a final judgment from the district court that rests on both of these grounds. Randy could have challenged invalidity as well as non-infringement. It was incumbent on it under Rule 61 to essentially say, you know, we're raising claim construction challenges. We're raising other challenges that somehow undermine the invalidity verdict because a party and appellant is required to show an effect on its substantial rights in order to disturb a jury. You're arguing this without any case support. I'm sorry? You're arguing this without any case support. Well, I think the— Just right now, I don't know what the right answer is as to whether the district court has the authority to withhold entry of judgment on this alternative ground. I would like to know whether there are cases one way or the other. You're not citing any. I mean, you're just arguing the Seventh Amendment sort of in the abstract requires this. I don't know whether that's true or not. Well, I think Rule 59 itself established—I think the federal rules established that there are certain grounds for challenging. There's no case authority. That's the problem. Well, and I think Gasparini v. Center for Humanities, the Supreme Court said the re-examination clause forbids re-examining a jury verdict except on the— I think we have a better course here to just send this back to the district court and have her clarify whether she meant to set aside the invalidity finding or not and make clear to her that she can't hold it in abeyance because it was part of the jury's verdict. And then she can decide. It sounds—I think that the parties confused her—and I'm not suggesting necessarily it was you—confused her into thinking that she had the discretion not to reach it. I don't think she did, but maybe there's case law that suggests she did. But in any way, we could avoid that hard legal question if we just make her clarify whether the final judgment rested on both grounds or one. And if she says, yes, I can do it on one ground, then maybe we need briefing on whether that's legally permissible. But when we don't even know whether she re-exited it on one ground or two, we're being asked to resolve a very difficult legal question with a factual basis that is very unclear. Well, let me make a couple points. First, I think it is clear what she thought she was doing. And in any way, I don't think that she would have had the authority under the rules to do anything other than—and the Seventh Amendment to do anything other than what she did. And I guess I would also point out that if—Rendy is the appellant here. There is an existing verdict of invalidity that the district court did not set aside. If Rendy thought that there was some lack of clarity there or disagreed with something that the district court did there, it was incumbent on it to appeal that. And it didn't. It didn't raise that. So I would submit that this is very much like the court's decision in Becton-Dickinson v. Bard, which is a case where the district court was the fact finder. It ruled on both invalidity and non-infringement. The case came up. The patentee ignored invalidity as though it didn't exist and argued only non-infringement. And the court said that when that happens, the thing to do is to treat that as waiver on behalf of—by the patentee because it's incumbent on the appellant to raise all issues that it thinks might be unclear or that it might need in order to win. And I do think that there are compelling reasons not to send this back for yet more here. You know, this case—Google prevailed entirely at trial. This went to trial. Rendy had a chance to ask for the verdict to be in the alternative. It didn't. So Google prevailed on both grounds. As any prevailing defendant, it has a really strong interest in having— A jury verdict doesn't result in an automatic judgment. There has to be an entry of judgment. And she apparently thought, at least the way I read it, that she wasn't entering judgment on the invalidity issue. It's very confusing, but that would be—like Judge Hughes, that's the way I would read it. Well, I guess I would submit on that, that she changed the form of the verdict—of the judgment slightly between the trial and the final judgment. The only change was that now the verdict said—or the judgment said—it just said entry for Google and against a Rendy on the sole claim of non-infringement. So the only difference between the two was that the very first judgment mentioned invalidity. The second judgment didn't. It just said verdict against a Rendy. I think that the best reading of that is that what she said on pages 95 and 96 of the appendix. She wasn't making any substantive change to the verdict. She expressly declined to take out invalidity. And so I think all she was doing was just saying, I acknowledge that there's no counterclaim of invalidity here, so I'm just going to make the judgment clear that there's only one claim in the case, and it's a Rendy's claim of non-infringement. And so I think that's what she was doing. She was just saying rule against— You mean a Rendy's claim of patent infringement, not non-infringement. You are starting to confuse me in saying she ruled on non-infringement. I'm sorry, I misspoke. There's one claim, which is a Rendy's claim of infringement. Under Commel v. Cisco— It can be defeated by either non-infringement or invalidity. Right. And what we know from Commel v. Cisco is that that can be supported by alternative grounds of non-infringement and invalidity. So I think that is what the district court did here. The problem is, look, at page 99, in the middle of the page, she says, because Google did not seek a declaratory judgment of invalidity, the court also has discretion to not consider a Rendy's arguments. And under the circumstances of this case, the court will exercise its discretion to not do so, as it would be a waste of judicial resources. That sounds very much as though she's not addressing the merits of the post-trial motions. I think that's right. She was not addressing the merits of the post-trial motions. And I think the reason— Here's the problem. If your view of the law is correct, then she can't do that, right? She has to address it because it's a motion that's pending. She can't. She has to either deny it or grant it. She cannot refuse to address it. Well, I think she could refuse to address the merits. I think she denied it. The way I would understand this— You want to read it as her denying it implicitly. But it's hard. It's very, very hard for me to— I mean, you can parse out portions of the record to support either view, I think, on this. That she just entered final judgment against them on patent infringement and entered the jury verdict, which had two things. But then you look at these colloquies and stuff, and it sounds like she thought she had discretion not to rule on the post-trial motion about invalidity. And I think your position is she didn't have discretion not to rule on it. She had to deny it if she wanted— she had to grant it if she wanted to remove invalidity from the case, right? Yes. And if she didn't want to grant it, she had to deny it. And it doesn't sound to me like she thinks she's denying it either. So I think what she did was deny it as harmless. That's how I would read this. That because Arendi had not challenged— Again, you want to read the record in the light most favorable to you. And I just don't understand from the record that that's what she thought she was doing. And isn't it better for us to figure out what she actually was doing? And then we can figure out if what she did was legally correct or not. Because if she did think she had the discretion to disregard the jury's verdict on invalidity and enter a final judgment only on infringement, your view is that that's just legally incorrect, unless she ruled against—in their favor on a post-trial motion. That's correct. She can't do that legally. She can't. That's correct. And that's what we told her below. That's what we told the court below. But what I—I guess I'm not—with respect, not reading this simply in the light most favorable to Google. I think if you read these sentences— No, I know. I don't want to quibble about what it says. Because I understand your point. And I mean, if I'm forced to decide who has the better reading, I don't know what I would do. But because I would have to do it in light of what the law says. But when I don't know what she was doing, I don't want to insist that she did something legally wrong when she thought she was just doing what was available to her. And that would be basically what we'd be saying if we said that the invalidity verdict of the jury is an independent basis for affirmance. Because I don't really—let's just assume I don't think she thought that she was keeping that in the case. Well, I think even if she didn't think she was keeping that in the case— She did, in your view. She did keep it in the case. And Arendi could have appealed that, right? It could have appealed her way of handling the post-trial litigation. It didn't. And then I think what it would have had to do here before this court is say, the arguments we are making—it would have to show the court how the arguments it's making somehow undermine the invalidity verdict. That's what you would do to get relief from a verdict on appeal under Rule 61, which does say that this court must disregard any errors that don't affect the substantial rights of the parties. And we would say that because they didn't appeal the invalidity verdict or suggest that there's anything that undermines it in their other challenges, that anything with respect to the 843 is harmless. But I guess if I could turn to the 101 issues with my remaining time. Why don't you first, since we're on the 843, let's talk about whether the district court's construction of document was correct, which seems to me to be possibly wrong. So just to be clear, I think the issue with respect to document that makes a difference here is the editability issue, not the word processing one, because it was the editability issue that governed the summary judgment. District courts seem to reason that because a document has to be a word processor document, that somehow it has to be editable. I don't follow that, since a word processing document could be a read-only document. I think you're right about that. So I think the two claims are, I think the two definitional issues are independent, though, and they rest on independent evidence. So with respect to editability, I think the primary point there is that all of the claims of the 356 patent require the document to be editable, because they all contain a limitation that says the user enters textual information into a document. So we know that in those claims, the word document has to be an editable document, because it's not modified. It just says document. We know it has to be editable. But there's some claims that don't have that language. And claim one talks about performing an action, and clearly contemplates that performing the action could be editing or display, right? So yes, there are some claims that are sort of agnostic as to whether the document would be editable. But I think once we know that all of the claims in the 356 and some of the claims in the 843 require the word document to mean editable document, then the principle that a term that is used throughout a family of patents that came from the same application that share common specifications, that term has to be interpreted the same across all the patents. So what that means is that once we know that document has to be editable in the 356, the term has to be given the same meaning in all of the claims, even those that don't necessarily, if they were standing alone, require that same characteristic. But I think that's just sort of a consequence of this Court's principle, that a term that has to have one meaning in a particular claim has to be interpreted the same for all of the related claims. It doesn't have to be interpreted the same. Well, it's presumptively interpreted the same. And I would say that all of the evidence, all of the other evidence points to that interpretation, points the same way. So in the specification, every single flowchart, the description of the problem, the description of the present invention, all of the embodiments, they all talk about a user editing the document, working in the document, inserting text. It's unanimous. And Arendi has not pointed to a single thing that goes the other way. It has not pointed to a single limitation that would be redundant or anything that wouldn't make sense in any of the claims. So I think this is a case where the presumption that the term has to be interpreted the same in all of the claims has to be the right answer here, because all of the evidence points in the same direction. Why don't you turn to unpatentability? Back to 101. To 101. So I think these claims are directed to, I think, the quintessential abstract idea of manipulating, analyzing, and manipulating information. The Court has held that that is abstract. And I think the claims are directed to that abstract idea rather than to any improvement in the technological capability of a computer. And I think we know that because although Arendi claims that beneficial coordination is the technological improvement, even assuming that that sort of coordination is, in fact, a concern of the patent, and I'm not sure that it is, but even assuming that it is, the claims never explain how to achieve beneficial coordination. So I think Arendi defines that term as sort of, you know, while the user's working in the document, the search will be performed for related contact info in a second program, the claims are completely functional with respect to that limitation. So for instance, in 843 Claim 1, it just says that while the document is displayed, the user presses a button, causing a search for the search term in a separate source. The 854 is the same thing. It just says, use the text to search the database. That is just claiming the result of the beneficial coordination. It's not explaining how it's done. There's nothing about how to overcome any potential barriers to coordination between the two programs, like security barriers or compatibility barriers. And so I think what that shows under this court's case law is that the claims are really focused, they're not focused on how to improve a computer's capability to coordinate between programs. Instead, they sort of assume that a skilled artisan would know how to do that function, because it's not the innovation of the patent. So I think that the patents just come down to automating this coordination function, and in that sense, they are just like the claims that the court held abstract in credit acceptance, where the court said that communication between previously unconnected systems or databases is not a technological improvement. So I think that's the case here with respect to all four patents. I think we agree that the patents rise and fall together, and I think they are all very clearly abstract under this court's case law. Okay, thank you. Mr. Kaminsky? May it please the Court, Jeffrey Kaminsky, on behalf of Oath, I will be addressing the grant of summary judgment of no direct infringement by Oath. Which Mr. Lehan didn't discuss. He did not. Okay. So under Arendi's theory, the infringing device is a user device such as a smartphone loaded with the Android operating system and an Oath app. Oath only provides one of those required components. In addition, the evidence shows that it's the user that's the final assembler of the device. This is insufficient to show direct infringement. So under Arendi's first theory of infringement on appeal, it asserts that Oath makes the computer-readable medium encoded with instructions when Oath downloads its code onto the user device. But the brief doesn't cite any evidence that Oath itself downloads the code onto the user device. In fact, the evidence cited on page 54 of Arendi's brief, they cite to 7725 of the appendix. That's a document that describes that the user does the downloading onto their own device from either the Apple App Store or the Play Store. None of those, not the user, not the App Store or the Play Store, are Oath. And Arendi doesn't present any evidence that they are. The Centrix case relied on by Arendi doesn't help them. In the Centrix case, there was evidence that the accused infringer itself went to the customer site and did the installation to create the infringing system. But that's not what happens here. Neither Oath nor anybody acting on Oath's behalf does the installation or the downloading onto the user device. Arendi's second theory of infringement that Oath offers to sell the claimed computer readable medium fails for at least the same reasons. In addition, there's no genuine dispute that the Oath code, Oath app that is available for download does not include all the required elements. And Arendi's expert testified that he did not provide any opinion that it is. This again is insufficient to show direct infringement by Oath. And for those reasons and the other reasons set forth in the briefing, the grant of summary judgment of no direct infringement by Oath should be upheld. Okay, thank you. Mr. Lahad, you have two minutes. Thank you, Your Honor. So as Your Honor alluded to, we don't appeal verdicts. We appeal judgments. And in this case, I think the judgment only rested on infringement. And if you go to Appendix 100, there's footnote 4 in the court's order. And I think that sheds additional light on what the court was trying to do and perhaps might help resolve some of this confusion. I don't want to read the entire thing, but the upshot is that the court was talking about deciding a case on alternative grounds and how it may help a higher court. And the court said, under the unique circumstances of this case, there is no reason for this to address the alternative grounds of invalidity where that opinion is either going to be unhelpful because it's unnecessary or uses the wrong claim construction and thus unlikely to be all that helpful to an appellate court that's going to review the invalidity issues de novo. So it's expressly not deciding anything on the alternative grounds. I think the fact that there was a change in the judgment post-verdict versus the final judgment. You could just as easily assume that what she's saying is, I'm not going to write anything on invalidity because it won't be helpful to the court. But there's nothing that prohibits what the parties can or must raise on appeal. And so it's not clear to me what she was doing, but I can read this as her saying, I'm just not going to write on your Rule 59 emotion. I'm going to enter judgment based on the jury's verdict. And the judgment she entered does not say judgment in favor of Google on non-infringement. It says judgment against you on your claim of patent infringement. And both grounds found by the jury would defeat your claim of patent infringement. That is what the judgment says, yes. Right. And she didn't, that's what her final judgment was, right? It doesn't specifically rule out the invalidity ground. And I understand what you're trying to say. My view here is that this is just all very, very confusing. And I don't have any idea whether she actually thought she could not rule on the 1519 motion on the portion of invalidity. And if she thought that, whether that's legally correct. I think the hook for, I think she did think that, that she could not rule that she had discretion. I think she did think that it was legally correct under multi-form desiccants. Well, what if we think that's legally incorrect? Then the court would have to address language from multi-form desiccants saying that the district court has some discretion on that point. All right. I think we're out of time. Thank you, Your Honor. Thank all counsel, the case is submitted.